UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DEMETRIA FIRMAN and ANTHONY
PARKER, SR.,                                                                                            Plaintiffs,

v.                                                                                       Civil Action No. 3:19-cv-564-DJH

STEVE CONRAD et al.,                                                                               Defendants.

* * * * *

### MEMORANDUM OPINION AND ORDER

Plaintiffs Demetria Firman and Anthony Parker, Sr., were pulled over by four Louisville Metro Police Department officers from the Ninth Mobile Division: Defendants Kevin Crawford, Gabriel Hellard, Josh Doerr, and William Keeling, Jr. (D.N. 1, PageID # 4) The officers frisked Firman and Parker and extensively searched Firman's car and purse. (*Id.*, PageID # 15–18) Firman and Parker allege that the officers had no reasonable suspicion to pull them over and frisk them and lacked probable cause to search the purse or car. (*Id.*, PageID # 3–4) Firman and Parker further allege that the LMPD officers took these actions pursuant to an unlawful initiative implemented by Defendants Steve Conrad, LMPD Chief, and William Hibbs, Major of LMPD's Ninth Mobile Division. (*Id.*, PageID # 5, 10) Defendants Conrad, Hibbs, and Hellard move to dismiss the claims against them; defendant officers additionally move to dismiss Firman and Parker's Fourteenth Amendment claims. (D.N. 10-1, PageID # 49) For the reasons explained below, the Court will grant Defendants' motion in part and deny it in part.

**I.**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed R. Civ P. 12(b)(6)). On August 12, 2018, Firman attended church with her fiancé,

1

Parker, and his minor child. (D.N. 1, PageID # 3) While driving them all home in Firman's car, Parker made a proper left turn onto Broadway. (*Id.*) LMPD officers immediately initiated a traffic stop. (*Id.*, PageID # 13) Four officers (Crawford, Hellard, Doerr, and Keeling) surrounded Firman's car. (*Id*, PageID # 4, 14) Despite Parker having properly activated his left turn signal (*id.*), Crawford "indicated to [Parker] that he was pulled over for failure to use a turn signal." (*Id.*, PageID # 14) Parker "demonstrated that the signal was working while apologizing for its apparent malfunction," complied with the officers' requests, and informed Crawford that there were no drugs or weapons in the car. (*Id.*, PageID # 14–15)

Notwithstanding Parker's cooperation and cordial responses to Crawford's questions (*id.*, PageID # 15), Crawford "remove[d] [Parker] from his vehicle without any explanation, probable cause, or reasonable suspicion that he was engaged in or about to be engaged in any criminal activity or that he posed a threat to the officers." (*Id.*) Crawford went through Parker's pockets and frisked him, although he "had no reasonable suspicion of a weapon being on [Parker] when he frisked him." (*Id.*, PageID # 16) Meanwhile, Doerr demanded that Firman exit the vehicle and proceeded to frisk her "without her consent and without any reasonable suspicion that she [was] in possession of a firearm." (*Id.*, PageID # 15)

The officers then extensively searched Firman's car and purse. (*Id.*, PageID # 16) This search encompassed the entire car and trunk, including items within the vehicle (a wallet, a box of chicken, a guitar bag). (*Id.*, PageID # 16–17) Firman did not consent to the search of her car, trunk, or purse. (*Id.*, PageID # 17) The officers detained the family during the search, and Parker and Firman "were never advised that they were free to leave." (*Id.*) The officers found no drugs, weapons, or evidence of any crime. (*Id.*, PageID # 18)

Conrad and Hibbs, while not present at the stop, "explicitly and implicitly authorized, approved, and/or knowingly acquiesced in the . . . unconstitutional conduct [by] the LMPD Officers." (*Id.*, PageID # 10) Specifically, Conrad and Hibbs implemented a "People, Places and Narcotics" initiative. (*Id.*) The initiative conflicted with official LMPD policy but "was the practiced custom of the Ninth Mobile Division under directives from Defendants Conrad and Hibbs," and Conrad and Hibbs "were both responsible for [the initiative's] policies, practices and customs." (*Id.*) The initiative included "explicit and implicit directives to Ninth Mobile officers" to engage in actions including "perform[ing] frisks on every stop without regard for reasonable suspicion . . . seek[ing] searches of vehicles on every stop without regard for reasonable suspicion or probabl[e] cause . . . [and] search[ing] vehicles inside and out, as well as belongings inside the vehicle." (*Id.*, PageID # 10–12) "All the LMPD Officers' unlawful conduct [described above] was pursuant to training, direction, and ratification of Hibbs and Conrad which each knew amounted to a malicious and deliberate indifference to the rights of citizens, including Plaintiffs." (*Id.*, PageID # 19)

Firman and Parker assert claims under 42 U.S.C. § 1983 as well as a state-law claim of negligent training and supervision. (*Id.* at 22–25) Defendants have moved to dismiss the claims against Conrad, Hibbs, and Hellard, as well as the Fourteenth Amendment claims (D.N. 10-1, PageID # 49), arguing that (1) Conrad and Hibbs are entitled to sovereign immunity for state-law claims raised against them in their official capacities; (2) Conrad and Hibbs are entitled to qualified immunity for all claims raised against them in their individual capacities; (3) Firman and Parker failed to plead facts supporting their claim of negligent training and supervision; (4) Firman and Parker failed to plead facts supporting any claim against Hellard; and (5) Firman and Parker do not state a Fourteenth Amendment claim upon which relief can be granted. (*Id.*, PageID # 50–59)

3

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 8 and will not withstand a motion to dismiss. *Id.* at 679; *see* Fed. R. Civ. P. 8.

**A.     Immunity**

    **1.     Sovereign Immunity**

Defendants correctly argue that as employees of Louisville Metro, Conrad and Hibbs are entitled to sovereign immunity for state-law claims asserted against them in their official capacities. (D.N. 10-1, PageID # 50); *see Thieneman v. Smith*, No. 3:17-CV-292-DJH, 2018 WL 1522357, at *4 (W.D. Ky. Mar. 28, 2018); *Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 WL 3166163, at *13 (W.D. Ky. June 20, 2013). But this argument does not help Conrad and Hibbs because Firman and Parker have not raised state-law claims against them in their official capacities, but rather only in their individual capacities. (*See* D.N. 1, PageID # 23–24) Firman and Parker's responses to Defendants' motion confirm what is apparent from their complaint— they assert only federal claims against Conrad and Hibbs in their official capacities. (*See* D.N. 11,

PageID # 62–65; D.N. 12, PageID # 76–79) Conrad and Hibbs have correctly declined to raise a defense of sovereign immunity to these claims. *See Scherzinger*, 2013 WL 3166163 at *12 ("[T]he Louisville/Jefferson County Metro Government does not enjoy [sovereign] immunity [from § 1983 claims] because it is not considered an entity of the state.").

### 2. Qualified Immunity

Defendants assert that Conrad and Hibbs are entitled to qualified immunity for Firman and Parker's state and federal claims against them in their individual capacities.[1] (D.N. 10-1, PageID # 51–55) "Qualified immunity, pleading requirements, and Rule 12(b)(6) have a complicated relationship." *Siefert*, 951 F.3d at 761. The Sixth Circuit has, at times, instructed courts to "refrain from using qualified immunity at the motion-to-dismiss stage" because it is an affirmative defense, and "Federal Rule of Civil Procedure 8(a) requires only that a plaintiff *state* a claim, not that a plaintiff show that he can overcome an affirmative defense." *Id.* Additionally, "the fact-intensive nature of qualified immunity makes it often a bad fit for Rule 12(b)(6)." *Id.* (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)).

But "[d]efendants may raise the qualified immunity defense in response to a 12(b)(6) motion because it is 'an immunity from suit rather than a mere defense to liability.'" *Id.* at 761–62 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Thus, despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss." *Id.* "This happens when the *complaint* establishes the defense." *Id.* (citing *Peatross v.*

---

[1] The complaint does not clearly identify whether Count 4, alleging that Conrad and Hibbs negligently trained and supervised the LMPD Officers, raises a state-law claim, a § 1983 claim, or both. (D.N. 1, PageID # 24–25) Defendants point out that Firman and Parker's complaint "do[es] not specifically raise a § 1983 failure to train claim," but interpret the claim as having done so for the purposes of Defendants' motion to dismiss. (D.N. 10-1, PageID # 55–56) Firman and Parker's responses show that they intended to raise a § 1983 failure-to-train claim as well as a state-law claim. (*See* D.N. 11, PageID # 70; D.N. 12, PageID # 83)

5

*City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016)). As explained below, that has not happened here.

### a. § 1983 Claims

"In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized 'qualified immunity' for such officers, 'shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Lyons v. City of Xenia, Ohio*, 258 F. Supp. 2d 761, 775 (S.D. Ohio 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Qualified immunity is a defense only to individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09cv-301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011).

"Under federal qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6242153, at *6 (W.D. Ky. Nov. 28, 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The [p]laintiff bears 'the burden of showing that' the [d]efendants are 'not entitled to qualified immunity.'" *Hoskins v. Knox Cnty., Ky.*, No. 17-84-DLB-HAI, 2018 WL 1352163 at *19 (E.D. Ky. Mar. 15, 2018) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)); *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable

officer would have known that his conduct violated that right." *Hoskins*, 2018 WL 1352163 at *19 (quoting *Johnson*, 790 F. 3d at 653).

Firman and Parker allege that Conrad and Hibbs administered an initiative that directed the LMPD officers to perform frisks without regard for reasonable suspicion and to search vehicles without regard for probable cause. (*See* D.N. 1, PageID # 10–12) Such an initiative would violate clearly established constitutional rights. See *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *California v. Acevedo*, 500 U.S. 565, 569 (1991); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968); *Carrol v. United States*, 267 U.S. 132, 159 (1925). A reasonable officer would have known of this long-standing Supreme Court precedent, particularly given that the initiative allegedly contradicted official LMPD policy. (D.N. 1, PageID # 10) Firman and Parker have therefore met their burden of showing that Conrad and Hibbs are not entitled to a defense of qualified immunity against the § 1983 claims at this stage. *See Hoskins*, 2018 WL 1352163, at *19.

### b. State-Law Claims

Under state law, "an official sued in his or her individual capacity 'enjoy[s] only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.'" *Jefferson Cnty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 833 (Ky. 2004) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). This qualified immunity "protects officers from liability for discretionary acts, taken in good faith, within their scope of authority." *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011)). "Thus, if the discretionary act is taken in bad faith, qualified immunity does not apply. Bad faith is '[t]he opposite of [']good faith,['] and it is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.'" *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *9 (W.D. Ky. Nov. 28, 2018) (quoting *Rowan Cnty. v. Sloas*, 201 S.W.3d

7

469, 483 (Ky. 2006) (citations omitted) (emphasis omitted)). "'Bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." *Id*.

As discussed above, Firman and Parker allege that Conrad and Hibbs directed the LMPD officers to take actions—including performing frisks without regard for reasonable suspicion and searching vehicles without regard for probable cause—that violated clearly established constitutional rights. *See supra* at section II part (A)(2)(A). Again, a reasonable person in Conrad or Hibbs's position would have known that such actions were unconstitutional. *Id*. This violation of constitutional rights which a person "in [Conrad or Hibbs'] position presumptively would have known was afforded to [Firman and Parker]" amounts to bad faith. *Penman*, 2018 WL 6220921, at *9. Thus, Firman and Parker's complaint has not established a qualified-immunity defense for Conrad or Hibbs, and it would therefore be inappropriate at this stage to dismiss Firman and Parker's state-law claims against Conrad and Hibbs on this ground. *See Seifert*, 951 F.3d at 762.

**B.      Failure to State a Claim**

   **1.      § 1983 Claim Against Conrad and Hibbs**

Defendants argue that Firman and Parker have failed to plead facts that support a § 1983 failure-to-train claim. (D.N. 10-1, PageID # 8–10) The legal elements of a § 1983 failure-to-train claim depend on whether the claim is brought against a defendant in his or her individual or official capacity. *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). The complaint here does not specify into which category it falls (*see* D.N. 1, PageID # 24–25), but in their briefing both parties invoke the standard for an official-capacity claim. (*See* D.N. 10-1, PageID # 56; D.N. 12, PageID # 84)

An official-capacity failure-to-train claim is "a broad[] claim concerning the custom or policy of a municipality" and "implicate[s] the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker." *Essex*, 518 F. App'x at 355. "Such claims do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act." *Id*. "A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees . . . or 2) the fact that the constitutional violation alleged was a patently obvious and 'highly predictable consequence' of inadequate training." *Id*. at 355–56 (internal citations omitted). The second category applies to a "narrow range of circumstances" where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

Firman and Parker's complaint does not contain sufficient facts to support an official-capacity failure-to-train claim. They have not alleged any facts indicating that the municipality, i.e. Louisville Metro, had actual or constructive knowledge of a pattern of constitutional violations by untrained LMPD officers.[2] While Firman and Parker have alleged that Conrad and Hibbs implemented the People, Places, and Narcotics initiative and therefore would have been aware that the resulting "traffic stops routinely violated the constitutional rights of citizens" (D.N. 1, PageID # 10, 12), they have not shown that this alleged pattern of constitutional violations was by

---

[2] Parker's response states that "Plaintiffs are prepared to prove prior instances of unconstitutional conduct and ignoring a history of abuse of which [Defendants] were clearly on notice of defective training [sic] and that the training would cause injury by using People, Places and Narcotics." (D.N. 12, PageID # 84) But Firman and Parker have not included facts supporting this assertion—as it applies to the municipality—in their complaint.

9

"untrained employees." *Essex*, 518 F. App'x at 355. Rather, Firman and Parker acknowledge that the LMPD Officers were "bound by their Standard Operating Procedures" (D.N. 1, PageID # 7), which conflicted with the initiative's unconstitutional directives. (*See id.*, PageID # 22 ("The frisk, searches, and seizures were in violation of LMPD SOPs."))  They do not allege that the LMPD officers were unaware of or untrained in the SOPs.  Firman and Parker have therefore failed to demonstrate that the LMPD officers were "untrained employees" or had received "inadequate training," *see Essex*, 518 F. App'x at 355–56, and their official-capacity failure-to-train claim fails.[3]

### 2.  Claims Against Officer Hellard

Defendants argue that "there are no factual allegations which support the legal claims made against Officer Hellard." (D.N. 10-1, PageID # 58)  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  This means that "§ 1983 plaintiffs may not 'lump[] all defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Lang v. City of Kalamazoo*, 744 F. App'x 282, 292 (6th Cir. 2018) (quoting *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012).  The Court therefore "cannot ascribe the acts of all [i]ndividual [d]efendants to each individual defendant," but rather

---

[3] To the extent that plaintiffs also assert individual-capacity failure-to-train claims, those claims are not at issue here, but would seem a better fit for Firman and Parker's allegations. *See Essex*, 518 F. App'x at 355 (quoting *Phillips v. Roane Cnty. Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008)) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) (explaining that for an individual-capacity failure-to-train claim to succeed, "[a] plaintiff must demonstrate that the defendant supervisor 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'").

10

"must analyze separately whether [Firman and Parker] ha[ve] stated a plausible constitutional violation by each individual defendant." *Heyne*, 655 F.3d at 564.

The complaint identifies Hellard as one of four LMPD officers who participated in the stop (*see* D.N. 1, PageID # 4, 5), and states that the officers, collectively, unlawfully stopped the car, searched it, and detained the family. (*Id.*, PageID # 14, 16, 18)  But the complaint references Hellard specifically just four times (*see id.*, PageID # 2, 4, 5–6), stating only that he was "present and participated in the stop."[4] (*Id.*, PageID # 4)  Firman and Parker have thus failed to meet the Sixth Circuit standard, and the complaint against Hellard must be dismissed. *See Heyne*, 655 F.3d at 564; *see also Lanman*, 529 F.3d at 687 ("While it is alleged that [defendant] was present and perhaps involved in [the action], plaintiff has failed to allege, with any particularity, the unconstitutionality of [defendant's] individual actions."); *Marcilis*, 693 F.3d 589, 595–97 (holding district court did not err in dismissing § 1983 claims against two defendants when complaint made only categorical references to them).

## C. Fourteenth Amendment Claims

Firman and Parker have brought claims against the officers for the stop, search, seizure, and detention under both the Fourth and Fourteenth Amendments. (D.N. 1, PageID # 22–23)  Defendants argue that "unlawful search and seizure challenges are properly analyzed under the Fourth Amendment" and therefore Firman and Parker's claims "brought under the Fourteenth Amendment . . . must be dismissed." (D.N. 10-1, PageID # 58–59)  But the rights guaranteed by

---

[4] Parker's response more precisely identifies some actions that Hellard took during the stop (e.g. accepting Parker's identification card and assisting in ushering Parker's son to the side of the road). (D.N. 12, PageID # 84–85)  But a court evaluating a motion to dismiss "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020). "Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations . . . not contained in the complaint." *Id.*

11

the Fourth Amendment have "been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Firman and Parker have brought claims against state officers. (*See* D.N. 1, PageID # 1–2) Asserting these claims under both the Fourth and Fourteenth Amendment is appropriate. *See* Vincent R. Fontana, MUN. LIABILITY L & PRAC. § 6.01 (4th ed. Supp. 2020-1 Supp., Wolters Kluwer 2020) ("Section 1983 incorporates the Fourteenth Amendment and makes violations of its provisions actionable, and the Fourteenth Amendment, in turn, incorporates most of the Bill of Rights."). Defendants' motion to dismiss on this ground therefore fails.[5]

### III.

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants' motion to dismiss (D.N. 10) is **GRANTED** as to Firman and Parker's claims against Officer Hellard and § 1983 failure-to-train claims against Conrad and Hibbs in their official capacities. Those claims are **DISMISSED.** The motion is **DENIED** as to Firman and Parker's Fourteenth Amendment claims and claims against Conrad and Hibbs in their individual capacities.

---

[5] Firman and Parker's complaint only explicitly mentions the Fourteenth Amendment in relation to their Fourth Amendment search and seizure claims (*see* D.N. 1, PageID # 22–23), and this is the only Fourteenth Amendment claim discussed in Defendants' motion to dismiss. (*See* D.N. 10-1, PageID # 58–59) In their responses, Firman and Parker argue that they have adequately pleaded an equal protection claim under the Fourteenth Amendment. (*See* D.N. 11, PageID # 70–71; D.N. 12, PageID # 85–86) The Court need not address this issue now because neither the Defendant's motion to dismiss nor reply raised it.